## Kipp's Estate.

*Guardian and ward—Decree of appointment—Collateral attack.*

1. A decree appointing a guardian from which no appeal has been taken cannot subsequently be collaterally attacked.

*Trusts and trustees—Active and passive trusts—Expenditures on minors—Payment to guardian.*

2. While a fund must remain in the hands of a trustee named in a will to whom direction has been given to expend, and will not be transferred to a guardian, this is not the case where the obligations imposed are passive.

3. Where a testator gives the residue of his estate to trustees to pay the income therefrom to his wife, and after her death to pay over the principal to grandchildren, the shares of minor grandchildren after the widow's death are payable to their guardian.

*Trusts and trustees—Interest chargeable to trustees—Act of June 7, 1917, P. L. 442—Orphans' court—Discretion—Appeal—Review.*

1. A trustee acting in good faith, who keeps trust funds in his hands ready to disperse, without mingling them with his own, should not be charged with interest thereon, unless he has used them for his own profit, or invested them so as to produce interest,

or suffered them to lie idle when they might have been invested, or needlessly delayed settlement or surrender of the property, or in some way or other showed a want of diligence and good faith.

5. When the orphans' court has determined, in the exercise of a proper discretion, that under all the circumstances of the case a trustee should not be charged with interest and that the allowance of the interest would work an injustice, its decree will not be reversed.

Argued January 25, 1926. Appeals, Nos. 40 and 63, Jan. T., 1926, by Scranton Trust Co., Guardian, and U. M. Fell and J. W. Hawes, Trustees, from decree of O. C. Bradford Co., Dec. T., 1924, No. 54, directing payment of moneys, in estate of George W. Kipp, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition for order to pay over moneys to guardian. Before MAXWELL, P. J.

The opinion of the Supreme Court states the facts.

Decree in accordance with the petition. Scranton Trust Co., guardian, and U. M. Fell and J. W. Hawes, trustees, appealed.

*Error assigned* in No. 40, was decree directing payment to guardian, quoting record.

*Error assigned* in No. 63 was failure to allow interest on balance, quoting record.

*John C. Ingham,* for trustees.—The trustees are the guardians: Pleasonton's Est., 232 Pa. 381; Partridge's Est., 241 Pa. 158; Ferry's Est., 26 Pa. Dist. R. 322; Ritchey's Est., 17 Pa. Dist. R. 964, 966; Boyle's Est., 20 Pa. Dist. R. 1119.

The income on which the guardian appellant is here seeking interest has been in use all the time, it has not been idle, and the guardian's wards and the trust estate have had the benefit of it, both directly and indirectly:

Kipp's Est., 277 Pa. 294; Eberly's App., 110 Pa. 95, 98; Hibb's Est., 143 Pa. 217, 224; Howell's Est., 180 Pa. 515; Peales' Est., 17 Pa. Dist. R. 339, 340.

*Walter W. Harris,* of *Knapp, O'Malley, Hill & Harris,* for guardian.—In the case at bar there is no discretion given to the trustees as to the payment of the income. They are not directed to see to its application, but on the contrary the income is payable forthwith to the beneficiaries by virtue of the direction in the will: Earp's Est., 2 Parsons 178.

Where no discretion is given to the trustees to see to the application of the income from the trust estate, such income should not be retained, by the trustees, but should be paid to the legally appointed guardians for the estates of the beneficiaries: Royer v. Meixel, 19 Pa. 240.

A trustee is liable for interest on moneys received by him which he neither invested nor paid over, in compliance with the duties of his trust: Stearly's App., 38 Pa. 525; Hughes' App., 53 Pa. 500; Luken's App., 47 Pa. 356; Worrell's App., 23 Pa. 44; Pray's App., 34 Pa. 100; Griffith's Est., 147 Pa. 274.

OPINION BY MR. JUSTICE SADLER, March 19, 1926:

George W. Kipp died in 1911, leaving a will in which, after making certain specific devises, he provided, in section five, that his executors and trustees should set aside $10,000 for each of his grandchildren, the income to be used, as necessary, for their care and education, the balance to be paid to them upon reaching majority. In paragraph six, he directed the "executors and trustees to invest the rest, residue and remainder of [his estate] in such ways as may be consistent with safety, to collect promptly the interest or dividends therefrom, and to pay the income or profits thereof to [his wife], Martha A. Kipp, in such amounts, and at such times as she may direct, during the term of her natural life."

After the decease of the wife, which has now occurred, the income, and, subsequently, the principal, were made payable to seven grandchildren in equal shares. Later, the Scranton Trust Company was appointed guardian of all the minors. The trustees insisted that the proper interpretation of the will required the retention by them of the fund first provided for, and above referred to, as well as the residuary estate, for the purpose of support-ing and caring for the minors designated. To the ap-pointment of the Scranton Trust Company, as guardian for them, no objection seems to have been raised by any-one in interest. It is now insisted that the court was without jurisdiction to make such designation, but as no appeal was taken from the original order (Phillips's Est., 16 Pa. Superior Ct. 330), the decree entered can-not be now attacked collaterally in this proceeding: Johnson v. Blair, 126 Pa. 426; Kramer v. Mugele, 153 Pa. 493.

The trustees, claiming the right to control both funds created for the ultimate benefit of the grandchildren, filed an account, and to it many exceptions were inter-posed. These were finally disposed of by the learned court below, and, on appeal, the decree entered was af-firmed: Kipp's Est., 277 Pa. 294. A reference to the reported decision will give, in more detail, the prelimi-nary facts leading to the present litigation, and no useful purpose would be served by repeating them. We may say, however, that this court cited, with approval, the statement of the auditing judge that the labors of the trustees "called for an unusual and extraordinary service of high character. They were not cases of the usual routine management of a trust of ordinary busi-ness. They called for great labor and responsibility, and a high degree of ability and skill in order to save the estate from loss" (p. 296).

After the affirmance of the decree referred to, a pe-tition was presented by the Scranton Trust Company, guardian of four of the grandchildren, asking for a

citation directing the trustees to pay over the balances found to be due to the respective wards, who joined in the application. It may be noted that the three other beneficiaries, for which similar provision had been made by the testator, had either been paid in full, or received advances, but, in the present proceeding, four minors alone are interested. An answer was filed by the trustees, setting up that the entire estate, under the terms of the will, was to be held by them for the benefit of the grandchildren, so that proper support, maintenance and education could be furnished, and averring that it was for this reason that the balances, determined to be payable to the respective wards, had not been turned over. It was their contention, and apparently honest belief, that the entire funds, referred to in paragraphs five and six of the will, were to be used for this purpose. A replication was filed, and, on the pleadings alone, a decree was entered by the learned court below directing the delivery, of the sum shown by the account, to the guardian of each. From this order an appeal has been taken by Fell and Hawes, the two trustees.

The single question raised is as to the extent of the power conferred upon appellants by the Kipp will. Undoubtedly, the special fund, provided by paragraph five, must remain in their hands, and this is conceded by the Scranton Trust Company, guardian. However, as to the balance directed to be distributed under paragraph six, it is insisted that the trustees have no control thereof, but that the same should be paid to the appointed representative of the grandchildren. It is undoubtedly true that, where authority has been lodged by testator in certain individuals to receive and invest moneys and to perform active duties in the distribution of the same, the funds must remain in their hands until the time fixed for the termination of the trust: Partridge's Est., 241 Pa. 158; Rudy's App., 20 W. N. C. 241; Eberly's App., 110 Pa. 95. "It was [to] the [trustees'] legal discretion, within defined limits, that the will committed the em-

ployment of the income derived from the fund. The utmost limit to which the legal guardian's interference could have gone, would have been to ask the intervention of the court in case of abuse of discretion on the part of the trustee in failing to perform a manifest duty": Pleasonton's Est., 232 Pa. 381, 385. Under such circumstances, where positive duties are to be performed, the fund must remain in the hands of the one named in the will to whom direction has been given to expend, and will not be transferred to a guardian, or, in case of lunacy, to a committee. The contrary is true if the obligations imposed are merely passive: Earp's Est., 2 Pars. 178; Royer v. Meixel, 19 Pa. 240. In the present case, in so far as the fund was derived from the residuary estate by reason of item six, already referred to, the guardian is entitled to the balance found in the hands of the trustees, for as to it no special direction to expend, in their discretion, is given. The appeal of the trustees, therefore, must be dismissed.

A cross-appeal has been filed by the guardian, based upon the failure of the court below to allow interest on the balance found due after some five years of litigation, the result of exceptions filed on behalf of the grandchildren, and finally dismissed, the order being subsequently affirmed by this court. It will first be observed that this case was heard on the pleadings, the petition, answer and replication. No testimony was taken to show any improper conduct or neglect in the making of investments by the trustees. On the contrary, it was found that they acted with the utmost diligence. In the absence of some proof of failure on their part to perform their duties, the order of the court below, declining to allow interest, should be sustained. It is true that such charge will be made against a fiduciary who fails to invest within a reasonable time, when he has opportunity to do so, if there is no necessity for retaining in his hands funds for the use of the cestui que trust (Stearly's App., 38 Pa. 525), but where some active duty

is required, such as maintaining the one entitled to the income, as evidently made necessary in the present case, no such charge should be made, except as to balances which are kept on hand without reason: Griffith's Est., 147 Pa. 274; Baker's App., 8 S. & R. 12. Nor should he be charged with such sum if the fund is withheld because of honest mistake (Pennypacker's App., 41 Pa. 494), nor where the delay has been caused by exceptions filed to an account submitted, not by the trustee, but by those who are to be benefited by the fund in his hands: Yoder's App., 45 Pa. 394. Of course, if the act of the trustee causes unreasonable delay and loss, or if he mingles the funds with his own, he is chargeable, as here insisted: Noble's Est., 178 Pa. 460. The general rule applicable has been thus stated: "The liability of the trustee to pay interest must be determined from the character of the trust, and the circumstances attending its administration. The general rule is that a trustee, acting in good faith, who keeps funds in his hands ready to disperse, without mingling them with his own moneys, should not be charged with interest thereon...... Ordinarily a trustee is not chargeable with interest on the trust funds unless he has used them for his own profit, or invested them so as to produce interest, or suffered them to lie idle when they might have been invested, or needlessly delayed settlement and surrender of the property, or in some other way shown a want of diligence and good faith": 39 Cyc. 422.

It is further to be remembered that the orphans' court in the present case determined, after an examination of all the facts, that an allowance of interest would be unjust. The Act of March 29, 1832 (section 18, P. L. 190), provides, "The amount of interest to be paid in all cases by executors, administrators and guardians shall be determined by the orphans' court under all the circumstances in the case, but shall not in any instance exceed the legal rate of interest for the time being." This was a new section, as appears by the record of the

commissioners who drafted the act in 1830, and was intended to give discretion to the orphans' court as to whether such charge should or should not be made, and, if so, at what rate, depending upon the facts of each particular proceeding. In 1917, the section was reënacted, substituting only the word "fiduciaries" for "executors, administrators and guardians," a change which merely clarified the evident intention: Fiduciaries Act of 1917, P. L. 442, section 44 (b). Here, the court below, after consideration of the entire matter, was of the opinion that injustice would be worked if interest was allowed, and, therefore, refused to make such order. It was a matter largely within its discretion (Elton's Est., 48 Pa. Superior Ct. 585), and we see no reason for interfering with the conclusion reached.

The order and decree of the orphans' court is affirmed, and the appeals entered to No. 40, January Term, 1926, and No. 63, January Term, 1926, are dismissed; costs of both appeals to be paid in equal parts from the distributive shares of the minors.