## Commonwealth, to use, v. Hughes, Executor, et al.

*T. H. Rockwell*, for plaintiff.

*G. Mason Owlett* and *Charles G. Webb*, for defendants.

CRICHTON, P. J., December 30, 1935.—In the statement of claim filed in this suit it is alleged that Mary Smith, in her lifetime a resident of Jackson Township, Tioga

County, Pa., died on December 23, 1919, testate; that her will, duly probated in the office of the Register of Wills of Tioga County, named the defendant George A. Hughes as the executor thereof; that said George A. Hughes, being a nonresident of Pennsylvania, executed and filed a bond as such nonresident executor in the penal sum of $17,000, upon which bond the defendants Vine B. Hughes and Ross A. Mitchell were sureties; that by said will decedent bequeathed to the plaintiff Martie Smith Martin the sum of $100, to be held in trust by said executor until' the legatee reached the age of 30 years, and then to be paid, with accrued interest, to the said legatee by the said executor; that on September 3, 1920, the executor filed his final account, which was in due course confirmed by the court; that thereupon an auditor was appointed to report distribution; that said auditor performed the duties of his appointment and filed his report to no. 12, November term, 1921, in which report he awarded $95 to George A. Hughes as trustee for Martie Smith Martin; that the latter became 30 years of age on April 3, 1935; that he has made demand for the payment of his legacy upon the defendants George A. Hughes and Vine B. Hughes; and that they have neglected and refused to make such payment.

The affidavit of defense raising questions of law assigns a number of reasons why in law the suit should not prevail against the sureties on the executor's bond. The only reason insisted on at the argument, however, is that the bond is merely an executor's bond, that the liability of the defendant principal, George A. Hughes, if any, to the use plaintiff Martie Smith Martin is that of a trustee and not of an executor, and that as a consequence there can be no recovery in this suit against these sureties.

For reasons to be set forth hereinafter the plaintiff cannot prosecute this action in this forum at this time. But in order to clarify the issue for the future and to correct if possible loose practice in our orphans' court which the records here reveal, and particularly because we under-

stand that there are other and larger claims arising out of this will and the execution thereof that may come before us later, we will, in passing, comment briefly on the whole situation.

The use-plaintiff, Martie Smith Martin, was a minor at the time of the filing of the executor's final account, the appointment of the auditor, the filing and confirmation of the latter's report, and for some years thereafter. Section 59($k$) of the Fiduciaries Act of June 7, 1917, P. L. 447, requires that in all proceedings in the orphans' court affecting the interests of a minor notice shall be given his guardian, and that if he has none a guardian ad litem shall be appointed. If this is not done the decree of the court (in this matter, the confirmation of the auditor's report) can be attacked collaterally. Minors must always have someone sui juris to represent them before a decree injuriously affecting their interests can be sustained: Komara's Estates, 311 Pa. 135. And if no one else takes the necessary steps to protect the minor it is the duty of the fiduciary himself to do so: Simpson's Estate, 253 Pa. 217, 222. It may be argued in the instant case that the minor was not injured by the decree because the auditor's report, confirmed by the court, directed distribution to the executor as trustee of the full amount that was due the minor. Such an argument ignores the fact that under section 57($a$) of the Fiduciaries Act, supra, the appointment of a nonresident as a trustee is subject to the approval of the court and a bond may be required. Had a guardian ad litem been appointed it would have been his duty not only to insist on such approval, but to ask the court to require security to be given by the trustee before any funds were awarded him as such. Had this been done the innocent minor would not now be faced by the alternative of losing his legacy or collecting from the sureties of the executor because of the default of a trustee (identical with the executor) who has filed no bond.

No petition for the discharge of the executor has ever been presented, it apparently having been assumed that

the confirmation of his final account and of the report of the auditor operated as such. This is an erroneous assumption: Williams v. Short, 155 Pa. 480. A fiduciary who has completed his duties and filed his account should petition for his discharge, first giving notice to those whose interests may be affected thereby.

By reason of the failure of the executor to obtain a discharge in this manner, and his failure to take any other action indicative of a change in the nature of his possession of the fund from that of an executor to that of a trustee, further difficulties will attend the ultimate determination of the legal rights and liabilities of the parties to this action. Had he presented such a petition it could not have been allowed until he had shown payment of the fund to a qualified trustee, in this case himself, and there would be no question in what capacity, if any, he is liable. As it is, that question must be determined by litigation, and while the principle that governs is well defined, its application to the specific situation is not simple. When an executor or administrator also occupies some other character with regard to the estate it will be presumed that the property in his hands is held in the capacity in which he ought to receive it, and upon the termination of his duties in one capacity the property is transferred by operation of law to his possession in the other so as to release the sureties on the bond in the former capacity from further liability. It is in some cases difficult to say when the transfer from one capacity to the other takes place, but it is well settled that when property has been received in one capacity the change, in order to shift the responsibilities of the sureties, must be evidenced by some overt act or express election to hold the property in the other capacity: Commonwealth, to use, v. Messinger et al., 237 Pa. 1, 7; Skeer's Estate (No. 1), 249 Pa. 288. Whether a decree directing the payment of the money by the executor to the trustee will operate as effectively as such an overt act is doubtful. In principle it probably ought to be presumed that he has done what he should do: Commonwealth, to

use, v. Gregory et al., 261 Pa. 106; though it may well be doubted whether such presumption arises when the result is to free his sureties from a liability under which they might otherwise have labored.

But all this is aside from the question upon which the disposition of the matter now before us depends, and is pointed out only in the hope that it may serve to correct looseness of practice that has been too prevalent in our orphans' court.

We neither sustain nor overrule the propositions of law set forth in the affidavit of defense, but judgment will be entered for the defendant because the court of common pleas has no jurisdiction to entertain the suit. Whether it be regarded as a suit against George A. Hughes as executor, a suit against him as trustee, or a suit against the sureties on his bond as executor, the forum in which a remedy must first be sought is the orphans' court. Section 46 (g) of the Fiduciaries Act, supra, provides that the latter court shall have exclusive jurisdiction of the accounts of trustees, including testamentary trustees, and in this case, there being no averment that any account has been filed by the trustee (or by the executor acting as trustee) there can be no foundation for a suit in the common pleas against the sureties on the bond. The amount due must first be determined by an accounting in the orphans' court. When so determined, the decree of that court can be enforced against the principal as effectively as could a judgment in a suit in assumpsit, and the matter is also ripe for a suit in the common pleas against the sureties. It cannot be said that the amount now due the plaintiff from the trustee has been fixed by the auditor's report confirmed in 1922. That report merely directed the payment by the executor to George Hughes, trustee, of the sum of $190 under item 5 of the will, and that item contains two legacies, not one. We have no right to assume that one half of this sum belongs to each of these two legatees. Nor have we the right to assume that a devastavit has taken place. These things can be ascertained only

after an accounting. The trustee (or executor) has had this fund in his hands for over 13 years. Perhaps he can show that he has had it legally invested, what the income and expense has been, and what commissions, if any, he is entitled to. To pursue this suit in the common pleas would mean that the common pleas would have to determine these matters and fix the amount with which he is chargeable; and that it has no jurisdiction to do: Engle v. Engle, 21 Luz. L. R. Rep. 277.

This question is not raised by the pleadings, but even if all parties should expressly submit themselves to our jurisdiction it would still be the duty of the court to take notice of the situation and to refuse to attempt to assume jurisdiction: English v. English, 19 Pa. Superior Ct. 586. Objections to the jurisdiction are of two classes: first those relating to the authority of the court over the subject matter, and second, those relating to its authority over the parties. Objections of the first class cannot be waived or jurisdiction obtained by acquiescence: The Lewisburg Bridge Co. v. The County of Union et al., 232 Pa. 255; Malessa v. Pa. R. R. Co., 22 Dist. R. 1087.

In passing, we point out that this trust is a violation of the rule against accumulations insofar as it does not dispose of the income accruing after the beneficiary becomes of full age. Counsel should consider this in connection with any further action that may be contemplated.

### Order

Now, December 30, 1935, it is directed that judgment be entered for the defendant without prejudice however to the right of the plaintiffs to proceed for an accounting in the orphans' court, and thereafter to take such steps as may be necessary and proper for the collection from the trustee or his sureties, or both, of whatever amount the account may show to be due.